THE STATE OF KANSAS V. DANIEL M. NIXON.

1. ALLEGED CRIMINAL, *When Responsible — When Not.* Where a person at the time of the commission of an alleged crime has sufficient mental capacity to understand the nature and quality of the particular act or acts constituting the crime, and the mental capacity to know whether they are right or wrong, he is generally responsible, if he commits such act or acts, whatever may be his capacity in other particulars. But if he does not possess this degree of capacity, then he is not so responsible.

2. SANITY — *Reasonable Doubt.* In a criminal prosecution, where the jury entertain a reasonable doubt as to whether the defendant is sane or insane with respect to the particular acts charged against him, they should acquit; and *held,* that the court below charged the jury in substance to this effect.

*Appeal from Russell District Court.*

AT the March Term, 1882, *Daniel M. Nixon* was convicted of murder in the second degree, and sentenced to imprisonment for life. He appeals. The opinion contains a sufficient statement of the facts.

*J. G. Mohler,* for appellant.

*W. A. Johnston,* attorney general, and *Edwin A. Austin,* for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was was a criminal prosecution for murder in the first degree. The defendant, Daniel M. Nixon, was charged with killing William Crawford, in Trego county, on the 9th day of September, 1880, by shooting him with a gun loaded with gunpowder and leaden balls. For reasons not necessary to be stated, the case was tried in Russell county, where the defendant was convicted of murder in the second degree, and sentenced to imprisonment for life. On the trial it was admitted by the defendant that he killed Crawford, as charged in the information; but he interposed two defenses: first, self-defense; second, insanity — the latter of which was the real and the important defense. No claim is made in this

court that the court below erred with reference to the first-named defense; hence it is not necessary for us to again mention it.

With reference to the defense of insanity, the defendant claims that the court below erred in its instructions given to the jury, and also erred in refusing to give certain other instructions asked for by him, and consequently erred in overruling the defendant's motion for a new trial; and these are the only rulings of the court below alleged for error in this court, or relied upon by the defendant for a reversal of the judgment of the court below. The instructions given by the court below with reference to insanity read as follows:

"The counsel for the defendant claim also here that the defendant should not be held responsible for these acts alleged or proved against him, no matter what they are, because of the fact of the defendant's insanity. Upon this question I say in the outset, that the cardinal rule of responsibility in the criminal law when judging of the acts of men is, was the accused, at the time of doing the act complained of, conscious of the nature of his act, or did he know that it was wrong to do it?

"Now there are many sorts of diseases of the mind that are dwelt upon and discussed by physicians and psychologists in these days, and that are presented in court for the consideration of a jury, and upon which the jury is asked to find that the mind of the accused was, at the time in question, so overthrown as to make him wholly irresponsible, and therefore that he should be acquitted for his otherwise unlawful acts.

"Now, however varied these diseases may be, for they may be as varied as the diseases of the body, I say to you they all come under the great or generic head of insanity, and the main test is the rule that I have just given; all else is argument or minor rule under this head, and which must resolve itself back to it. I will not discuss the evidence in the case upon this question — counsel will do so at length, I apprehend — and after applying it to the rules I herein lay down, I trust you may be fully able to discern that which is right. One or two things more, however, I should say.

"The testimony here, by deposition and otherwise, covers several years in the defendant's life. This is all proper testimony, and you should consider it for what you may think it is worth as bearing upon the question as I have stated it, re-

membering that it is the condition of the defendant's mind *at the time when* he fired the fatal shot or shots, upon which you are to judge him, and that all or any of this testimony is only competent as it may throw light upon his probable and actual condition at that point of time. Some of the witnesses have testified that the defendant had the reputation at his old home in Illinois of being insane. Some witnesses have given it as their opinion, from acquaintance with and knowledge of him and his acts, that he was insane; some that he was sane on some subjects, and insane on others; some that he was insane at times, and sane at others; some that he was melancholy at times; one at least that his reputation was of laboring under delusions; others that he was eccentric, and so forth. You should consider this testimony as it is. I do not pretend to quote it, but only to partially classify it. Many of these witnesses have testified as to circumstances in his life, and that the reasons of the conditions of mind, or some of them, that they have given, were from special causes named by them. These causes are at least three or four. You should also consider the testimony of those witnesses who testify of him since his residence in Kansas. The defendant himself has also appeared before you. If you should believe from all this testimony and circumstances, that the mind of the defendant was diseased, you would then further inquire: Was he at the time of the killing laboring under such a defect of reason and intellect as not to know the nature and quality of that particular act he was doing, or if he did know this, that he did not know that he was doing wrong? If he had sufficient intelligence and reasoning powers to know what he was doing, that it was wrong, and the will and mental powers to do or not to do it, then in contemplation of law he is responsible for the act he has done. The law recognizes what seems to be an incontrovertible fact, that a person may be sane upon some questions and insane upon others, and that he will be responsible morally and legally for acts done on those subjects on which he is sane, and irresponsible for action upon those subjects wherein he is insane. Hence the rule that I have laid down; and the question always is as to sanity and responsibility upon the particular act in question. This is called partial insanity, and it is not necessary that it should be total. In this as in all cases of prosecution for alleged crime, the defendant is presumed to be innocent of the charge made against him, and innocent of any other degree of crime included in such charge, innocent of the act alleged to have been done, and innocent of any guilty

intent. This presumption stands at law and continues until and unless the contrary is proven by the evidence, and until each and every ingredient and element of the crime is proved by such evidence.

"When there is a reasonable doubt, therefore, whether the guilt of the defendant is satisfactorily proven by the evidence, you must acquit; and when such guilt is satisfactorily proven, but there is a reasonable doubt in which of two or more degrees of an offense the defendant is guilty, there can be only a conviction for the lower degree. . . .

"Upon the question of insanity, I say that every person is supposed (presumed) in the law to be sane until the contrary appears. It devolves upon the defendant, therefore, in the first instance to raise the question. When he does so, and introduces testimony fairly tending to prove the same, our supreme court has laid down the following rule: 'In a criminal action where the defense of insanity is set up, it does not devolve upon the defendant to prove that he is insane by a preponderance of the evidence; but if upon the whole of the evidence introduced on the trial, together with all the legal presumptions applicable to the case under the evidence, there should be a reasonable doubt as to whether the defendant is sane or insane, he must be acquitted.'

"And where habitual unsoundness of mind is once shown to exist, either wholly or partially, it is presumed to continue until the presumption is rebutted by competent proof. The jury can, in determining this case or any question involved, take into consideration, or rather call to their aid, all such general knowledge as is common to mankind.

"If you should not be satisfied that the defense of insanity should prevail, you should consider any testimony introduced upon that question for whatever you might think it worth, as bearing upon the question of the beliefs of the defendant of the imminence of his danger when assailed by the deceased, if you should believe he was assailed. In fact, you should decide no question until considering all the evidence that may bear upon it. . . .

"If you should believe that the allegations of the information would be made out by the state were there no defense here, it would be well then for you to consider, first, this defense of insanity. If you should say that it should prevail under the rules I have given you on that subject, you would then acquit; for if a man is not found responsible for his acts, in law he is innocent of it, no matter how monstrous, physically, it may

appear; but if you should here say he should be held responsible for it, you would then turn and determine more exactly the nature of the act itself, and here would arise the question of self-defense."

The defendant asked the court below to give certain instructions to the jury, which the court refused, and the defendant duly excepted; among which are the following, which the defendant still claims the court below erred in refusing to give, to wit:

"2. In criminal trials the burden of proof is always on the state, and it never shifts to the defendant. The state is therefore required to make out every portion of its case by competent testimony, or the defendant must be acquitted."

"5. In a criminal action, when the defense of insanity is set up, it does not devolve upon the defendant to prove that he is insane by a preponderance of the evidence; but if upon the whole of the evidence introduced on the trial, together with all the legal presumptions applicable to the case, under the evidence, there should be a reasonable doubt as to whether the defendant is sane, or insane, he must be acquitted.

"5½. Where habitual unsoundness of mind is once shown to exist either wholly or partially, it is presumed to continue to exist until the presumption is rebutted by competent proof beyond a reasonable doubt."

"9. So far as a person acts under the influence of mental disease, he is not criminally accountable; and the jury in a criminal case must be satisfied beyond a reasonable doubt of the defendant's mental capacity to commit the crime charged, or they must acquit. The defendant in a criminal case is not required to prove his insanity in order to avail himself of that defense, but merely to create a reasonable doubt on this point, whereupon the burden of proving his sanity falls upon the state.

"10. Where the delusion of a party is such that he has a real and firm belief of the existence of a fact which is wholly imaginary, and under that insane belief he does an act which would be justifiable if such fact existed, he is not responsible for such act. If the jury entertain a reasonable doubt as to the soundness of the mind of the prisoner at the time of the commission of the homicide charged, he is entitled to the benefit of that doubt, as he would be to the benefit of a doubt as to any other material fact in the case; it being under the stat-

14—32 KAS.

ute of this state, a necessary ingredient of the offense that the person charged shall at the time of the commission of the offense be of sound mind; and if the evidence shows that the prisoner at the time of the commission of the act was not of sound mind, although the jury may believe he had judgment and reason sufficient to discriminate between right and wrong in the ordinary affairs of life, even at the time of the commission of the offense, they cannot find him guilty, but must acquit.

"11. If the jury believe that the defendant at the time of the alleged homicide labored under a partial delusion only, and is not in other respects insane, he must be considered in the same situation as to responsibility, as if the fact with regard to which the delusion exists was real. For example, if under the influence of his delusion he supposes another man to be in the act of attempting his life, and he kills that man, as he supposes in self-defense, he will be exempt from punishment; and in such case you must acquit.

"12. Monomania may operate as an excuse for a criminal act when the delusion is such that the person under its influence has a real and firm belief of some fact, not true in itself, but which if it were true, would excuse his act; as when the belief is that the party killed had an immediate design upon his life, and under that belief the insane man kills in supposed self-defense, in such case he is not guilty, and you must acquit.

"13. If the jury believe from the evidence that the defendant was insane at times, but not continuously so, then it will devolve upon the state to prove to the satisfaction of the jury beyond all reasonable doubt that at the time of the homicide the defendant was not laboring under such insanity, and committed the act in one of his sane intervals; and unless the state so proves to your satisfaction, beyond all reasonable doubt, you must acquit."

The defendant excepted to the refusal of the court to give the instructions asked for by him, but did not except to the charge of the court, or to any portion thereof, or to any instruction given by the court to the jury, except as follows: "To the giving of which instructions, and to each and every portion thereof, said defendant, Daniel M. Nixon, by his attorney, then and there duly excepted." At the close of which charge the counsel for the defense, J. G. Mohler, Esq., arose and said:

"If it please the gentlemen on the other side, we will submit this case without argument. The charge of the court suits us, is plain, and a better speech than we can make; and we will submit the case right here."

The counsel for the prosecution, however, did not agree to submit the case without argument, and so the case was argued by counsel to the jury, and the jury found the defendant guilty, as heretofore stated.

The first question to be considered in this case is, whether the court below adopted the correct rule with reference to criminal responsibility, in cases of insanity. The court below stated the rule as follows:

"Was the accused, at the time of doing the act complained of, conscious of the nature of his act, or did he know that it was wrong to do it?"

We think the rule as stated by the court below is substantially correct. Where a person at the time of the commission of an alleged crime has sufficient mental capacity to understand the nature and quality of the particular act or acts constituting the crime, and the mental capacity to know whether they are right or wrong, he is generally responsible, if he commit such act or acts, whatever may be his capacity in other particulars; but if he does not possess this degree of capacity, then he is not so responsible. In other words, if he has mental capacity sufficient to distinguish between right and wrong with respect to the particular act or acts constituting the alleged crime, he should be held responsible for the commission of such act or acts, although he might be insane or imbecile with respect to other matters; but if he does not possess such capacity, then of course he should be held to be irresponsible.

We do not think that it is necessary to cite authorities upon this subject, as all the leading cases with reference thereto may be found quoted or cited in Lawson's work on "Insanity as a Defense to Crime." It is possible that an insane, uncontrollable impulse is sometimes sufficient to destroy criminal responsibility, but this is probably so only where it destroys the power of the accused to comprehend rationally the nature, character

and consequences of the particular act or acts charged against him, and not where the accused still has the power of knowing the character of the particular act or acts, and that they are wrong.   Indeed, it would seem dangerous to society to say that a man who knows what is right and wrong may nevertheless, for any reason, do what he knows to be wrong without any legal responsibility therefor.   The law will hardly recognize the theory that any uncontrollable impulse may so take possession of a man's faculties and powers as to compel him to do what he knows to be wrong and a crime, and thereby relieve him from all criminal responsibility.   Whenever a man understands the nature and character of an act, and knows that it is wrong, it would seem that he ought to be held legally responsible for the commission of it, if in fact he does commit it.   But upon this question of insane, uncontrollable impulse, we do not wish to express any very definite opinions, as we do not think the question is presented to us in this case.

The next question to be considered is, whether the court below erred in charging the jury with respect to the burden of proof.   The defendant claims that the court below erred in not charging the jury that if from the evidence they entertained a reasonable doubt as to whether the defendant was sane, or insane, they should acquit.   (*The State v. Crawford*, 11 Kas. 32.)   Now it would seem that the court below did not charge the jury to this effect in as direct and explicit terms as it probably should have done; but still we think the court gave substantially this charge.   In the first place, the court in its instructions to the jury defined murder to be "when a person of *sound memory and discretion* unlawfully killeth any reasonable creature in being and in the peace of the state, *with malice aforethought*, either express or implied," and instructed the jury that even murder in the second degree "must be committed *purposely* and *maliciously.*"   It will therefore be seen from this definition, that murder can be committed only by "a person of sound memory and discretion," and only by a person who could commit the same "purposely and maliciously."   In other words, insane persons cannot commit mur-

der. Hence, if the defendant was insane as to the particular act or acts with which he was charged, he did not commit murder. The court also instructed the jury that the defendant was to be presumed innocent until the contrary was proved, and until each and every ingredient and element of the offense was proved; and that if there was a reasonable doubt as to whether his guilt was satisfactorily shown, he must be acquitted. Now if the jury had a reasonable doubt as to whether the defendant was sane, or not, with respect to the matters charged against him, they must necessarily have had a reasonable doubt as to whether he was guilty of murder, or not; for if he was insane, he could not have been guilty of murder. That is, to doubt his sanity was to doubt his guilt; and the jury were instructed that if they entertained a reasonable doubt of his guilt, they must acquit. And this general instruction with regard to "reasonable doubt" covered the question of soundness of mind or insanity as well as all other questions in the case.

The court also instructed the jury that—

"In a criminal action where the defense of insanity is set up, it does not devolve upon the defendant to prove that he is insane by a preponderance of the evidence, but if upon the whole of the evidence introduced on the trial, together with all the legal presumptions applicable to the case, under the evidence, there should be a reasonable doubt as to whether the defendant is sane, or insane, he must be acquitted."

We think it is true that some of the instructions of the court below are justly subject to the criticism which counsel for the defendant has seen fit to bestow upon them, and yet we cannot say that any of them are so erroneous as to require a reversal of the judgment below. The *defendant* in this case, through his counsel, *did in fact "raise* the question" of insanity, and *did in fact introduce* "testimony fairly tending to prove the same," and the court instructed the jury that all such testimony was proper and should be considered by the jury. Hence, so far as this case is concerned, it is immaterial that the court below instructed the jury that it devolved upon the *defendant* in the first instance to *raise* the question of insanity, and to *introduce* testimony fairly tending to prove the same, for such

was in fact and beyond all doubt done; and *no evidence* was introduced by the prosecution, or by anyone else except the defendant, tending to prove that the defendant was insane.

With respect to the special instructions asked for by the defendant and refused by the court, we think the court should have given some of them. We think the court should have given the instructions numbered 5, 5½, and 9. The court, however, did give the instructions numbered 5 and 5½, except that it struck out from the one numbered 5½ the words "beyond a reasonable doubt." We think these words should have been allowed to remain; yet, as the court gave other instructions with reference to reasonable doubt, we cannot say that the court committed such material error by striking these words out as to require a reversal of its judgment.

The instruction numbered 9 also seems to have been substantially given in other instructions. Instructions numbered 10, 11 and 12 are hardly applicable to this case, and might have misled the jury if they had been given. Instructions 2 and 13 might properly have been given, though we cannot say the court erred in refusing them. Besides, it might have been necessary to change these instructions in some particulars in order to prevent their misleading the jury. With respect to instruction numbered 2, we might further say that the court in its general charge instructed the jury that the burden of proof was on the state, and that it devolved upon the state to prove the defendant's guilt beyond a reasonable doubt; and this would seem to be all that was necessary. Indeed, it would seem that the court below gave to the jury in its general charge the substance of all the instructions asked for by the defendant which the court was bound to give.

After a careful consideration of the whole case, we have found ourselves unable to say that the court below committed any material error, and therefore its judgment will be affirmed.

All the Justices concurring.