No. 19,198.

THE STATE OF KANSAS, *Appellee*, v. SWAN JOHNSON, *Appellant.*

SYLLABUS BY THE COURT.

1. MURDER—*Information Contains Essential Elements of Murder in First Degree.* An information which, instead of following some approved form, charged that the defendant feloniously, willfully, deliberately, premeditatedly and with malice aforethought made an assault upon the deceased with intent feloniously, willfully, deliberately, premeditatedly and with malice aforethought to kill and murder him, and did then and there with a loaded gun feloniously, willfully, premeditatedly and with malice aforethought shoot and inflict on him a mortal wound of which he instantly died—is held to contain all the essential elements of murder in the first degree, including deliberation.

2. MURDER—*Trial—Instructions Relating to Defense of Insanity Not Prejudicial.* The sole defense was insanity, and the defendant introduced the evidence of a large number of witnesses on that subject. After correctly charging as to the burden and degree of proof, the presumptions of innocence, sanity and the natural consequences of one's acts, the court instructed:

"It devolves upon the defendant, therefore, in the first instance, to raise the question. But a defendant in a criminal case is not required to prove his insanity by a preponderance of the evidence in order to avail himself of that defense, but merely to create a reasonable doubt on this point, whereupon the burden of proving his sanity falls upon the state. And if upon the whole of the evidence introduced on the trial, together with all the legal presumptions applicable to the case under the evidence, there should be a reasonable doubt as to whether the defendant was at the time of the shooting sane, or insane; with respect to the particular act charged against him, he must be acquitted."

*Held,* that in view of the correctness of other instructions and the fact that the defendant had introduced much evidence touching his claimed insanity no substantial prejudice resulted from the use of the language quoted.

3. SAME. The following was also given:

"The jury should then first consider this question of insanity—this defense of insanity—and if you should say that it should prevail under these instructions, that is to say, if you believe from the evidence that at the time of the shooting the defendant [was] laboring under such defect of reason from disease of the mind as not to know the nature and quality of the act he was doing, or if he did not know it, that he did not know that what he was doing was wrong, you should then acquit him; but if you should believe that, under the instructions I have given you, he should be held responsible, you should then turn and determine more exactly the nature of the act itself," etc.

*Held,* that in view of the entire charge this portion was not so misleading as to cause the jury to lose sight of the rule that it was only necessary in order for an acquittal that they should have a reasonable doubt as to the sanity of the defendant.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed May 9, 1914. Affirmed.

*C. W. Burch, B. I. Litowich,* and *W. B. Crowther,* all of Salina, for the appellant.

*John S. Dawson,* attorney-general, and *L. W. Hamner,* county attorney, for the appellee; *R. A. Lovitt,* of Salina, of counsel.

The opinion of the court was delivered by

WEST, J.: The defendant was convicted of murder in the first degree. This appeal presents two questions. It is contended that the information was bad for the reason that the killing was not alleged to have been done deliberately, and that the court erred in instructing the jury regarding the sole defense interposed— that of insanity.

The information charged that the assault was made feloniously, willfully, deliberately, premeditatedly and with malice aforethought to kill and murder, and that the shooting was done feloniously, willfully, premeditatedly, and with malice aforethought, giving a mortal wound, and that the defendant "in manner aforesaid unlawfully, feloniously, willfully, premeditatedly, and with malice aforethought did kill and murder." It is urged that the statutory and settled ingredient of deliberation is absent from that portion of the charge applying to the actual killing and that this omission is fatal.

The common-law crime of murder is by our statute divided into murder in the first and murder in the second degree, the former being "Every murder which shall be committed by means of poison or by lying in wait, or by any kind of willful, deliberate and premeditated killing." (Gen. Stat. 1909, § 2494.) "Deliberately" has been held to mean that the manner of the homicide was determined upon after examination and reflection; that the consequences, chances and means were weighed carefully, considered and estimated. "Premeditatedly" has been defined as meaning planned, contrived or schemed beforehand. (*Craft v.*

*The State of Kansas,* 3 Kan. 450, 483; *The State v. McGaffin,* 36 Kan. 315, 319, 13 Pac. 560; *The State v. Yarborough,* 39 Kan. 581, 587, 18 Pac. 474.)   While in some other states the two words have been deemed and held to be synonymous, it had long been determined here that "premeditatedly" has reference, as the literal meaning of the word implies, to having thought over the matter beforehand, and "deliberately" pertains more to the manner of committing the act, or to the fact that its commission was determined upon in cold blood.   It might be possible for one having thought over the matter and concluded to kill another to come upon him suddenly and commit the homicide in the heat of passion so that it could be said to have been committed premeditatedly, but not deliberately.   In *Smith v. The State of Kansas,* 1 Kan. 365, it was held that the indictment must charge that the killing was done deliberately and premeditatedly.   It was said in the Craft case:

"It is not only necessary that the accused shall plan, contrive, and scheme, as to the means and manner of the commission of the deed, but that he shall consider different means of accomplishing the act.   He must 'weigh' the modes of consummation which his premeditation suggests, and determine which is the most feasible."   (p. 483.)

The information, which contains one colon but not a period or semicolon, charges in one sentence that the defendant gave to the deceased a mortal wound of which he instantly died; that he did this unlawfully, feloniously, willfully, premeditatedly and with malice aforethought by shooting him unlawfully, feloniously, willfully, premeditatedly and with malice aforethought, with a gun with which he had assaulted him feloniously, willfully, deliberately, premeditatedly and with malice aforethought with intent to kill him feloniously, deliberately, premeditatedly and with malice aforethought.   Taking the story of the tragedy as divided and detailed by the information, it is to be observed

that one occurrence, one weapon, one homicide, one in-
tent and one state of mind appear.   Having with a
deadly weapon assaulted the deceased with premedita-
tion and deliberation, intending premeditatedly and de-
liberately to kill him, and proceeding at once to inflict
the mortal wound, it is practically impossible to escape
the conclusion that the premeditation and deliberation
characterized the entire transaction.   In *The State v.
Brown,* 21 Kan. 38, the indictment charged a deliberate
and premeditated assault by shooting, thereby inflicting
a mortal wound, but did not anywhere allege that the
assault or killing was done with a deliberate and pre-
meditated purpose of killing, and it was held bad.   It
appears that premeditation and deliberation were both
absent from the charge except as applying to the as-
sault.   It was said:

"The first part of the indictment charges, substan-
tially, that the defendant deliberately and permeditat-
edly committed an assault and battery upon Bledsoe
by shooting him with a pistol loaded with gunpowder
and balls; but it does not charge that the defendant at
the time had any deliberate or premeditated intention,
nor indeed any intention, of killing Bledsoe.   It sub-
stantially charges that he deliberated upon and pre-
meditated the shooting, the assault and battery, but it
does not charge that he deliberated upon or premedi-
tated the killing."   (p. 48.)

In *The State v. Stackhouse,* 24 Kan. 445, the indict-
ment charged a deliberate and premeditated intent to
kill and murder; that with this intent the defendant
made a deliberate and premeditated assault with a gun,
thereby giving to the deceased a mortal wound of
which he died, and this was upheld as containing all the
elements of the crime—"the assault, the killing, the
intent to kill, and the deliberate and premeditated in-
tent."   (p. 450.)   The full form of the indictment does
not appear but the matter was not considered at much
length, the decision being devoted mainly to other mat-
ters.   In the McGaffin case (36 Kan. 315) it was ob-

jected that the information did not expressly allege malice aforethought or intent to kill, but the short form was held sufficient, which charged that the defendant did then and there, unlawfully, feloniously, willfully, deliberately and premeditatedly kill and murder one Harrison Sherman by shooting him with a loaded revolver, and it was said:

"The terms employed by the county attorney in charging the offense are the full equivalent of a statement that the killing was done intentionally and with malice aforethought, and therefore the omission of those identical terms from the charge does not render it subject to the objection that has been urged." (p. 319.)

The court cited *The State v. Bridges,* 29 Kan. 138. There the information charged that the defendant with a deadly weapon did feloniously, willfully, intentionally, deliberately, premeditatedly and with felonious intent and with malice aforethought kill and murder the deceased by inflicting a mortal wound with the aforesaid deadly weapon. This was held sufficient.

By following the language of the statute and one of the informations which have been approved in some of the former decisions all questions and danger of error could have been avoided; but a careful consideration and close examination of the charge on which the defendant was tried leads to the conclusion that it contained all the essential elements of the offense.

The more serious matter relates to the instructions touching the defense of insanity. Without going into detail or citing decisions separately upon each point, it may be said that the law has long been thoroughly settled in this state that to convict one of murder whose sanity has in the progress of the trial been brought in question, either by affirmative evidence on his part or as the result of the state's evidence, the jury must believe beyond a reasonable doubt both his guilt and his sanity. In other words, if the evidence at the close of the trial leaves in the minds of the jury

a reasonable doubt as to the defendant's sanity he must be acquitted. The presumption of sanity, like the presumption of innocence, remains until something in the evidence raises a doubt concerning it. It is never true, at any time or at any stage of the trial, that in order to acquit the jury shall believe that the defendant was insane, nor is it true that at any point in the trial it devolves upon the defendant to produce evidence to create a doubt as to his own sanity. The instructions must all be considered together, and not isolated portions alone. It goes without saying that in a trial upon a charge of murder in the first degree no chances should be taken with the instructions, and they should be carefully drawn so as to state clearly the principles of law applicable. With these premises and bearing in mind that the only defense made or attempted was that of insanity the charge will be considered. The defendant requested an instruction which correctly stated the rule as approved in *The State v. Arnold,* 79 Kan. 533, 534, 100 Pac. 64, which was refused. The jury were correctly instructed as to the presumption of innocence, and in addition they were told that "The defendant in a criminal case is never required to establish his innocence, for the sufficient reason that the law presumes him innocent, and he has a right to rely upon this presumption in his favor, and before a conviction can be had the State must produce the evidence to establish his guilt and this evidence must be sufficient to satisfy the minds of the jurors as reasonable men of the truth of the charge to the exclusion of all reasonable doubt. No mere preponderance of the evidence nor any weight of preponderating evidence is sufficient to establish the guilt of the accused unless it generates a full belief that the defendant has committed the crime charged in the information, to the exclusion of all reasonable doubt."

Indeed, following this paragraph they were told for the fifth time that the defendant's guilt must be estab-

lished beyond a reasonable doubt—to the satisfaction of each juror. They were told that one is presumed to intend the natural and probable consequence of his acts, and that every person is presumed to be sane until the contrary appears. Then followed this language:

"It devolves upon the defendant, therefore, in the first instance to raise the question. But a defendant in a criminal case is not required to prove his insanity by a preponderance of the evidence in order to avail himself of that defense, but merely to create a reasonable doubt on this point, whereupon the burden of proving his sanity falls upon the state. And if upon the whole of the evidence introduced on the trial, together with all the legal presumptions applicable to the case under the evidence, there should be a reasonable doubt as to whether the defendant was at the time of the shooting sane, or insane; with respect to the particular act charged against him, he must be acquitted."

The words "together with all the legal presumptions applicable to the case under the evidence" are criticized as without significance and confusing, but they can hardly be given any other meaning than the presumptions already stated in the charge to which we have called attention. The words are taken literally from *The State v. Crawford,* 11 Kan. 32, syl. ¶ 2, and quoted with approval in *The State v. Child,* 40 Kan. 482, 485, 20 Pac. 275, and while better calculated to express a rule of law than to frame into an instruction, still we do not see any possibility that the jury could have been misled by their use here; and in *The State v. Nixon,* 32 Kan. 205, 4 Pac. 159, a charge containing them was upheld. Complaint is also made of the statement that "It devolves upon the defendant, therefore, in the first instance to raise the question." In the Nixon case this language was used and assigned as error, but it was said that as the defendant had in fact raised the question it became immaterial that the court told the jury that it devolved upon him so to do, "and to introduce testimony fairly tending to prove the same" (p. 213), because such was in fact done, and no evidence was

introduced by the prosecution tending to prove the insanity, and the charge in these respects, while criticized, was not deemed materially prejudicial. Here the jury were told that the defendant was "not required to prove his insanity by a preponderance of the evidence in order to avail himself of that defense, but merely to create a reasonable doubt on this point, whereupon the burden of proving his sanity falls upon the state." It is forcibly asserted that it did not devolve upon the defendant to create a reasonable doubt on this point of his insanity and that it was material error thus to charge. It is likewise strenuously contended that it was fatally erroneous to charge in the 27th instruction that if the jury should "believe from the evidence that at the time of the shooting, the defendant [was] laboring under such defect of reason," etc., they should acquit; "but if you should believe, that under the instructions I have given you, he should be held responsible, you should then turn and determine more exactly the nature of the act itself," etc. These expressions, together with the ones last before referred to, are submitted as evidence that the true rule touching the obligations to prove, and the burden of the proof, was lost sight of or reversed and the jury given to understand that in order to be acquitted the defendant must raise the question of his sanity, must introduce testimony fairly tending to prove the same, and that the jurors must believe that such proof had been adduced. The majority of the court, however, while regarding the portions of the charge under consideration taken by themselves as not free from grounds for criticism, are of the opinion that the whole charge considered together sufficiently informed the jury that the burden was upon the state to prove the guilt and sanity of the defendant beyond a reasonable doubt, and that heeding every part, as they are presumed to have done, they could not have been misled. From undisputed state-

ments in the briefs and upon the argument the manner of the killing and the conduct of the defendant, as originally shown by the state, as well as the evidence touching insanity offered by the defendant, were such as to call attention to the sole defense, and a verdict of guilty could not have been reached without either finding the proof by the state sufficient beyond a reasonable doubt or by ignoring repeated admonitions of the court embraced in its instructions, which the jury can not be presumed to have done and which the record does not show that they did. The fact that the defendant introduced the testimony of fourteen witnesses to establish the defense of insanity leaves it clear that the expressions relative to his raising the question and introducing testimony tending to support the same could not have confused the jury, and in view of repeated admonitions that they must find guilt beyond a reasonable doubt, the other phrases complained of are not deemed to have left the triers in any doubt as to the rules governing their deliberations.

A certain ruling and instruction touching a hypothetical question are complained of, but we do not find that the defendant was prejudiced by either.

The judgment is affirmed.

WEST, J. (dissenting) : When the charge was all read the jury found themselves properly instructed as to presumptions, the burden of proof and the question of sanity. But they also found themselves improperly told that in order for an acquittal it devolved upon the defendant, not "to prove his insanity by a preponderance of the evidence," "but merely to create a reasonable doubt on this point," whereupon the burden of proving his sanity (which never shifts) would fall upon the state. They were directed to consider this question, this defense of insanity, and were improperly instructed that if they should "believe from the evidence" that he was insane then they should acquit.

But if they should "believe, that under the instructions I have given you, he should be held responsible" then they should proceed to consider the other matters— making "belief" precisely the same whether applied to guilt or to innocence. Only by ignoring or wresting these expressions from their natural and ordinary meaning and significance could the jury have failed to be led astray by them. A similar situation arose in *The State v. Conway,* 55 Kan. 323, 40 Pac. 661. There the charge was burglary and larceny. The defense was an alibi. The court refused to instruct that the defendant was not required to prove this beyond a reasonable doubt but that it was sufficient if the evidence upon that point raised a reasonable doubt, and charged that evidence of an alibi had been introduced, and "If this is true, the defendant . . . should be acquitted." (p. 325.) This was held fatal, and it was said:

"The burden of proof is upon the State, and is not shifted because of the attempt of the accused to prove an *alibi;* and if, by reason of the evidence relating to that question, the jury should doubt the guilt of the accused, he is entitled to an acquittal." (p. 325.)

Speaking of the instruction it was said:

"This instruction, in effect, required the jury to believe the proof of an *alibi* before they could acquit him. . . . The evidence may be such as simply to raise a reasonable doubt of guilt and in that event the defendant may be acquitted." (pp. 325, 326.)

Whether the insanity in this case was real or feigned, the state can not afford to demand the defendant's punishment until his conviction shall have been accomplished in accordance with the settled rules of criminal procedure, which rules form the right and shield of the meanest as well as the chiefest citizen.

The judgment should be reversed, not for technical reasons but for failure to conserve the defendant's vital and substantial rights.

Mr. Justice SMITH joins in this dissent.