No. 49,214

STATE OF KANSAS, *Appellee,* v. FRANCIS DONALD NEMECHEK, *Appellant.*

(576 P.2d 682)

Opinion filed April 1, 1978.

*Gene F. Anderson,* of Hays, argued the cause and was on the brief for the appellant.

*David J. Harding,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from jury verdicts of guilty on five counts of first degree murder (K.S.A. 21-3401).

The victims of these crimes were killed in three separate incidents. The evidence discloses Sheryl Lynn Young, Diane Lynn Lovette and Guy William Young were picked up by defendant on Interstate 70 near Ogallah, Kansas, on December 13, 1974, and were taken to an abandoned farm house in Graham County where the two women were shotgunned to death and Guy, a three-year-old boy, was left to freeze. The bodies were found on January 13, 1975. Carla Baker, a college student, was abducted on the evening of June 30, 1976, as she rode her bicycle near the west edge of Hays, Kansas. Her remains were recovered

on September 21, 1976, in a deserted area on the Cedar Bluff Reservoir in Trego County after defendant told police where to look for her body. Sixteen-year-old Paula Fabrizius worked as a park rangerette at Cedar Bluff State Park during the summer months. On August 21, 1976, she was abducted from her duty post. After an extensive search her body was found the next day near Castle Rock, a natural rock formation in Gove County.

Defendant was arrested on August 24, 1976. Because of widespread local publicity surrounding the crimes, trial was moved to Salina, Kansas. The state introduced extensive evidence connecting defendant to the crimes, with the most damning evidence being defendant's confession to the five crimes.

At trial defendant presented insanity as a defense. His evidence included the testimony of two psychiatrists and several lay witnesses.

Because of the nature of the issues on appeal it is unnecessary to dialogue the evidence. Pertinent facts will be chronicled as necessary to determine the issues on appeal.

Defendant first argues he was entitled to an acquittal by reason of insanity at the conclusion of the state's evidence. He argues that an inference of insanity was created because of his insanity plea, the opening statements, defendant's confession, and the state's evidence. Once this was before the jury the state had a duty to show defendant was sane by introducing psychiatric testimony rather than waiting until rebuttal to introduce that evidence. Because of failure to introduce the psychiatric evidence in the state's case in chief, defendant believes he was entitled to an acquittal. We find no merit in his argument.

There is a presumption of sanity in a criminal proceeding that may be relied upon by the prosecution to establish a prima facie case. (*State v. Coltharp,* 199 Kan. 598, 433 P.2d 418 [1967].) The prosecution is never required to introduce evidence of sanity until some evidence is introduced which, if believed by the jury, could raise a reasonable doubt as to a defendant's sanity at the time the offense was committed. (See, *State v. Penry,* 189 Kan. 243, 368 P.2d 60 [1962]; *Wilson v. United States,* 288 F.2d 121 [D.C. Cir. 1960]; *State v. Clokey,* 83 Idaho 322, 364 P.2d 159 [1961]; *People v. Smothers,* 2 Ill. App. 3d 513, 276 N.E.2d 427 [1971], aff'd 55 Ill. 2d 172, 302 N.E.2d 324 [1973].) This evidence may come from either the defendant or the state. (*State v. John-*

*son,* 92 Kan. 441, 446, 140 Pac. 839 [1914]; *State v. Crawford,* 11 Kan. 32, 45 [1873]; *Davis v. State,* 90 Neb. 361, 133 N.W. 406 [1911]; *Lemke v. State,* 56 Okla. Crim. 1, 9, 32 P.2d 331 [1934].) The term "evidence," however, does not include the insanity plea or opening statements. Neither rebuts the presumption of sanity. (*State v. Coltharp,* supra at 602; *State v. Mendzlewski,* 180 Kan. 11, 13, 299 P.2d 598 [1956]; *United States v. Currier,* 405 F.2d 1039, 1042 [2d Cir. 1969], cert. denied 395 U.S. 914, 23 L.Ed.2d 228, 89 S.Ct. 1761 [1969]. *Cf., United States v. Marbley,* 410 F.2d 294 [5th Cir. 1969].) Defendant's self-serving statements that he was "depressed" and suffered memory lapses certainly do not indicate mental disease sufficient to overcome the sanity presumption, particularly in light of the conclusions of three psychiatric witnesses that defendant was faking badly on various psychological tests and might be attempting to appear sicker than he really was. (See, *United States v. Currier,* supra.)

The presumption of sanity is rebutted when evidence is introduced which could raise a reasonable doubt concerning a person's sanity. (*State v. Johnson,* supra at 447.) At that point the question of sanity becomes a question for the jury, assisted by proper instructions. (*State v. Johnson,* 223 Kan. 237, 240, 573 P.2d 994 [1977]; *State v. Coltharp,* supra at 603; *State v. Mendzlewski,* supra at 14.) If the jury has a reasonable doubt as to a defendant's sanity at the time the offense was committed, it is under a duty to acquit the defendant. (*State v. McBride,* 170 Kan. 377, 226 P.2d 246 [1951]; *State v. Nixon,* 32 Kan. 205, 4 Pac. 159 [1884]; *State v. Crawford,* supra at 43.) It is a rare occasion when an insanity question should be taken from a jury by a motion for acquittal. In *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290 (1973), we said:

> "A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion." (Syl. 3.)

In *State v. Chase,* 206 Kan. 352, 362, 480 P.2d 62 (1971), we quoted from *Dusky v. United States,* 295 F.2d 743, 756 (8th Cir. 1961) as to the test for acquittal in an insanity defense case:

> " '. . . [I]n order to remove this case from the jury's considera-

tion, . . . "reasonable men must necessarily possess a reasonable doubt as to defendant's sanity and . . . reasonable men must conclude that the government has failed to sustain its burden of proving beyond a reasonable doubt that the accused had the capacity to commit the crime." . . .' "

Unless evidence of insanity is so great that a trial judge can rule the government could not convince a reasonable man it has sustained its burden of proof as to defendant's sanity, the issue should go to the jury, as we have recommended in the past. (*E.g., State v. Sagebiel,* 206 Kan. 482, 480 P.2d 44 [1971]; *State v. Chase,* supra; *State v. Coltharp,* supra; *State v. Mendzlewski,* supra.)

In the case at bar the evidence presented in the state's case which might raise a reasonable doubt as to defendant's sanity was not so great as to require acquittal. Whether it rebutted the presumption of insanity is irrelevant as the jury was instructed concerning the presumption and how it could be overcome by evidence demonstrating insanity. Under those circumstances no error occurred by denying the motion for acquittal and submitting the issue to the jury.

Defendant also raises an issue concerning the use of the *M'Naghten* instruction, urging this court to abandon it for the A.L.I. test. Because of the recent decision in *State v. Smith,* 223 Kan. 203, 574 P.2d 548 (1977), we find this point without merit.

Defendant's second issue concerns the trial court's refusal to allow defense counsel to cross-examine the Trego County sheriff concerning defendant's fingerprint card in the sheriff's possession on the day the body of Paula Fabrizius was found. The card was in the sheriff's possession because defendant was previously arrested for sniping at a car traveling on the interstate. Defense counsel hoped to introduce into evidence the facts surrounding that case. The trial court excluded the evidence on the basis it was irrelevant to the present case.

Admission or exclusion of evidence is within the sound discretion of the trial court, subject to exclusionary rules. (*State v. Jakeway,* 221 Kan. 142, 147, 558 P.2d 113 [1976]; *State v. Wasinger,* 220 Kan. 599, 556 P.2d 189 [1976]; *State v. Baker,* 219 Kan. 854, 549 P.2d 911 [1976].)

Relevant evidence is defined as "evidence having any tendency in reason to prove any material fact." (K.S.A. 60-401[b]; *State v. Rueckert,* 221 Kan. 727, 561 P.2d 850 [1977].) The determination of relevancy is a matter of logic and experience, not a matter of

law. (*State v. Baker,* supra at 858.) In *State v. Brown,* 217 Kan. 595, 599, 538 P.2d 631 (1975), it was said:

"In discussing relevancy, we have frequently said that to be admissible in the trial of a case evidence must be confined to the issues, but it need not bear directly upon them. To render evidence of collateral facts competent, there must be some natural, necessary or logical connection between them and the inference or result which they are designed to establish. (*State v. Fagan,* 213 Kan. 587, 518 P.2d 552; *State v. Gauger,* 200 Kan. 563, 438 P.2d 463; and *In re Estate of Isom,* 193 Kan. 357, 394 P.2d 21.)"

The record discloses the incident took place on January 1, 1976. No other facts appear in the record except that defendant allegedly fired a rifle at a passing car on the interstate. Defendant argued the incident was relevant to support the defense psychiatrist's analysis of defendant's insane condition. From the state of the record we do not agree. He theorized that defendant killed his four women victims because of an insane hatred for his former wife, believing at the time of the slayings that he was killing his wife and not his actual victims. In order to support this theory the sniping incident must also have been a violent striking out at some female who defendant identified as his ex-wife. No such facts appear in the record.

In the absence of a properly recorded proffer setting forth the nature and detailed substance of the proposed evidence, a party may not assert error due to the erroneous exclusion of such evidence. (K.S.A. 60-405; *State v. Watkins,* 219 Kan. 81, 547 P.2d 810 [1976]; *State v. Nix,* 215 Kan. 880, 529 P.2d 147 [1974].) Based on the limited evidence before us, we cannot state the trial court abused its discretion in excluding the evidence. (See, *State v. Alderdice,* 221 Kan. 684, 688-89, 561 P.2d 845 [1977].)

Finally, defendant claims error in the exclusion of the observations of a polygraph examiner. This state has consistently held that polygraph results or the observations of the examiner are inadmissible absent a stipulation between both parties. (*State v. Blosser,* 221 Kan. 59, 558 P.2d 105 [1976]; *State v. Watkins,* supra; *State v. Lassley,* 218 Kan. 758, 545 P.2d 383 [1976]; *State v. Burnett,* 218 Kan. 696, 542 P.2d 707 [1976]; *State v. Emery,* 218 Kan. 423, 543 P.2d 897 [1975]; *State v. Lowry,* 163 Kan. 622, 185 P.2d 147 [1947].) The basis for the rejection has been the fact a polygraph machine and its operator are not said to be completely accurate because of the human elements involved. (*State v. Blosser,* supra at 60-61; *State v. Lowry,* supra at 627.)

Here defendant wanted to show whether there were any changes in his heartbeat, respiration or galvanic response during questioning. The purpose was to show the jury he truly did not remember committing the crimes and thus must be insane. The use of the machine for this purpose is no more admissible than it is for any other purpose previously rejected by this court. The results presented to a jury by a trained polygraph operator have been held to be too speculative; but the test results given to the jury without even that interpretative aid are even more speculative, particularly in light of the fact the polygraph machine escapes all cross-examination. The task of evaluating the readings of the machine is "too subtle a task of evaluation to impose upon an untrained jury." (*State v. Lowry,* supra at 627.) We find no error in excluding the polygraph test results.

The judgment of the trial court is affirmed.