No. 50,318

STATE OF KANSAS, *Appellee,* v. CONNIE ANN BATES, *Appellant.*

(597 P.2d 646)

Opinion filed July 14, 1979.

*William L. Fry,* of Shultz, Fry & Fisher, of Wichita, argued the cause and was on the brief for appellant.

*Robert J. Sandilos,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by defendant-appellant Connie Ann Bates from a conviction of one count of voluntary man-

slaughter (K.S.A. 21-3403) and one count of aggravated assault (K.S.A. 21-3410).

The crucial points on appeal relate to procedural matters in the lower court and an extensive statement of the facts surrounding the commission of the alleged crimes is not required. Suffice to say that after being beaten by her former live-in boyfriend, Joe Presley, defendant shot and killed him and then struck and threatened his new girlfriend, Yolanda J. Reed, with the same weapon used to dispatch Mr. Presley. Defendant was originally charged with first degree murder in connection with Presley's death but was bound over after the preliminary hearing on a charge of second degree murder. She was eventually convicted, in a second trial, of the lesser included offense of the voluntary manslaughter of Joe Presley and aggravated assault on Yolanda.

Appellant contends that she was illegally tried in the second trial after she had been placed in jeopardy in the first trial which was aborted by the trial judge over defendant's strenuous objections. The procedural steps prior to and during the trials are extremely important. Defendant was arrested at the scene of the crimes on August 27, 1977. On September 7, 1977, defendant moved the court for a mental examination to determine her competency to stand trial and her motion was granted without objection by the State. Defendant was examined by a Dr. Jehan, at the Sedgwick County Department of Mental Health, who filed a report with the court. On October 18, 1977, a hearing was held before the Hon. Tyler C. Lockett, district judge, and based upon the report of Dr. Jehan he found defendant competent to stand trial. On December 7, 1977, defendant filed, pursuant to K.S.A. 1977 Supp. 22-3219, a notice of intent to rely upon the defense of insanity and again asserted that she was not competent to stand trial. No action was taken by either the State or the defendant to secure additional mental and psychiatric examinations. On January 23, 1978, the case was called for trial before the Hon. Elliott Fry, associate district judge. Defendant's counsel again raised the issue of defendant's competency to stand trial. A hearing was held before Judge Fry wherein the defendant testified and the report of Dr. Jehan was again submitted to the court. The record discloses that during this hearing Judge Fry took over the questioning of the defendant and examined her at length. During the examination Connie Ann Bates testified she did not know what

date it was, did not know what day of the week it was, did not know what an oath was, did not know what murder was, that she had been struck in the head with a knife a year or so earlier and ever since had suffered from headaches, blurred vision and dizziness, that she did not remember being examined by Dr. Jehan and did not remember shooting Presley or fighting with and threatening Yolanda. Her testimony obviously reflects a person of either a very low I.Q. or a very limited education, or both. Dr. Jehan's report found that she was mildly mentally retarded with an I.Q. of only 61 and a mental age of nine years and one month. Based upon the oral examination of the defendant and the written report of Dr. Jehan, the court found defendant competent to stand trial and ordered that the trial proceed.

Jury selection began that same day and was completed at about noon on January 24, 1978. Opening statements were made by both parties and defendant's counsel referred to the mental deficiencies of his client, her inability to remember the events of August 27, 1977, and that she did not have the mental ability to commit the crimes charged.

Yolanda Reed was the first witness called by the State and on direct examination, in referring to the defendant's actions when she stopped hitting the witness, stated:

"A. She kind of caught herself and looked back and got this weird look on her face. And she kind of looked back in the back seat of the car and seen that Joseph was kind of laying through the bucket seats, and then she kind of backed off, started walking around."

Court was recessed for the day during defense counsel's cross-examination of the witness. The State then made certain motions and arguments to the court, outside the presence of the jury, which are not pertinent to the issues on appeal. The next morning before the jury was placed in the jury box the State made a motion to suspend the proceedings or for a mistrial for the purpose of having the defendant submit to a mental examination. The State's motion is not entirely clear as to whether the requested examination was for the purpose of determining the defendant's competency to stand trial or to determine her sanity at the time the offenses were committed. To say that defense counsel objected strenuously and vociferously would be an understatement; however, the motion was granted and the court declared a mistrial.

The journal entry prepared by the State reads in part as follows:

"IT IS THEREFORE ORDERED that the proceedings against the defendant be suspended until further order of the Court and that a psychiatric examination of the defendant be made at Topeka State Hospital, Topeka, Kansas, to determine if the defendant is able to: a) understand the nature and purpose of the proceedings against her; and b) make or assist in making her defense.

"IT IS FURTHER ORDERED that a complete neurological and psychological examination be made of the defendant to determine if she was sane at the time of the commission of the offense with which she stands charged, to-wit: August 27, 1977, as the defendant has filed a notice to rely on the defense of insanity."

Defendant continued to renew her objection at every subsequent stage of the proceedings although she did submit to an examination at Topeka State Hospital and was confined at that facility from February 7, 1978, to April 3, 1978. On May 26, 1978, Judge Fry entered another order finding the defendant competent to stand trial and ordered the proceedings resumed. On the same date, defense counsel filed a motion for dismissal of all charges on the ground that any further proceedings would be in violation of the double jeopardy protection of the Fifth and Fourteenth Amendments to the United States Constitution, Section Ten of the *Kansas Bill of Rights* and K.S.A. 1977 Supp. 21-3108. The motion was overruled June 2, 1978, and the defendant was again placed on trial, before a new jury on June 19, 1978. Defendant again moved for discharge and this motion was overruled by Hon. Michael Corrigan, who presided over the second trial. Defendant continued to renew her motions and arguments at every possible opportunity. She was found guilty by the jury on June 26, 1978. Post-trial motions raising the same issues were overruled and the matter is now before this court on appeal.

We now turn to the merits of this appeal. Defendant had filed a timely notice that she intended to rely upon insanity as a defense although she sought no medical examinations to establish such a defense. The State apparently felt that as the defendant was not going to present expert testimony it was not necessary for the State to seek any such testimony. It has long been the rule that in criminal proceedings the insanity of the defendant may be proved by non-expert testimony. In *State v. Rumble,* 81 Kan. 16, 105 Pac. 1 (1909), this court stated:

"The question of the defendant's guilt turned solely on whether he was insane. Inasmuch as he was not allowed to try to establish his insanity by the testimony of non-expert acquaintances—one of the well-recognized means of proving such a

fact—it can not be said that he was given a fair opportunity to prove himself innocent." p. 20.

See also *State v. Randol,* 212 Kan. 461, 513 P.2d 248 (1973); *State v. Chase,* 206 Kan. 352, 480 P.2d 62 (1971); *Fish v. Poorman,* 85 Kan. 237, 116 Pac. 898 (1911).

In *State v. Nemechek,* 223 Kan. 766, 576 P.2d 682 (1978), we stated:

"There is a presumption of sanity in a criminal proceeding that may be relied upon by the prosecution to establish a prima facie case. (*State v. Coltharp,* 199 Kan. 598, 433 P.2d 418 [1967].) The prosecution is never required to introduce evidence of sanity until some evidence is introduced which, if believed by the jury, could raise a reasonable doubt as to a defendant's sanity at the time the offense was committed. (See, *State v. Penry,* 189 Kan. 243, 368 P.2d 60 [1962]; *Wilson v. United States,* 288 F.2d 121 [D.C. Cir. 1960]; *State v. Clokey,* 83 Idaho 322, 364 P.2d 159 [1961]; *People v. Smothers,* 2 Ill. App. 3d 513, 276 N.E.2d 427 [1971], aff'd 55 Ill. 2d 172, 302 N.E.2d 324 [1973].) This evidence may come from either the defendant or the state. (*State v. Johnson,* 92 Kan. 441, 446, 140 Pac. 839 [1914]; *State v. Crawford,* 11 Kan. 32, 45 [1873]; *Davis v. State,* 90 Neb. 361, 133 N.W. 406 [1911]; *Lemke v. State,* 56 Okla. Crim. 1, 9, 32 P.2d 331 [1934].) The term 'evidence,' however, does not include the insanity plea or opening statements. Neither rebuts the presumption of sanity. (*State v. Coltharp,* supra at 602; *State v. Mendzlewski,* 180 Kan. 11, 13, 299 P.2d 598 [1956]; *United States v. Currier,* 405 F.2d 1039, 1042 [2d Cir. 1969], cert. denied 395 U.S. 914, 23 L.Ed.2d 228, 89 S.Ct. 1761 [1969]. *Cf., United States v. Marbley,* 410 F.2d 294 [5th Cir. 1969].)" pp. 767-768.

Once evidence has been introduced indicating the possible insanity of the defendant, the burden of proving the defendant is sane rests with the State the same as with all other elements of the alleged crime. *State v. Chase,* 206 Kan. at 358; *State v. Crawford,* 11 Kan. 32 (1873); *United States v. Jacobs,* 473 F.2d 461 (10th Cir. 1973).

The conclusion is inescapable that the State, having heard the defendant's opening statement, during the testimony of its first witness became aware that defendant's sanity might become an issue through its own witnesses and thereby create a burden of proof that the State was not prepared to meet. This conclusion is borne out by the order of the court in the journal entry prepared by the State to the effect that the defendant was to be examined to determine her sanity at the time of the commission of the alleged crimes.

Does a mistrial, under these circumstances, after a defendant has been placed in jeopardy violate the constitutional and statutory prohibitions against double jeopardy? We think it does.

The State relies upon K.S.A. 1977 Supp. 22-3302 and K.S.A. 22-3423, which provide in pertinent part:

"**22-3302. Proceedings to determine competency.** (1) At any time after the defendant has been charged with a crime and before pronouncement of sentence, the defendant, said defendant's counsel or the prosecuting attorney may request a determination of the defendant's competency to stand trial. If, upon request of either party or upon his or her own knowledge and observation, the judge or magistrate before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial the proceedings shall be suspended and a hearing conducted to determine the competency of the defendant.

. . . .

"(6) If proceedings are suspended and a hearing to determine the defendant's competency is ordered after the defendant is in jeopardy, the court may either order a recess or declare a mistrial."

"**22-3423. Mistrials.** (1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:

. . . .

"(f) The trial has been interrupted pending a determination of the defendant's competency to stand trial."

Although not mentioned by the State in its brief, the following provisions of K.S.A. 1977 Supp. 21-3108 are pertinent to our inquiry:

"(1) A prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution:

. . . .

"(c) Was terminated without the consent of the defendant after the defendant had been placed in jeopardy, except where such termination shall have occurred by reason of: (i) The illness or death of an indispensable party; or (ii) the inability of the jury to agree; or (iii) the impossibility of the jury arriving at a verdict. A defendant is in jeopardy when he or she is put on trial in a court of competent jurisdiction upon an indictment, information or complaint sufficient in form and substance to sustain a conviction, and in the case of trial by jury, when the jury has been impaneled and sworn, or where the case is tried to the court without a jury, when the court has begun to hear evidence."

It is clear from these statutes that a trial court is authorized to declare a mistrial for a competency examination and a properly declared mistrial would not bar retrial of the defendant. However, in the case at bar appellant had already been declared competent to stand trial the *day before.* A situation could arise where a second competency examination is warranted especially when the time between the first determination and the trial is substantial, thereby suggesting the possibility that appellant's mental condition has changed. Or possibly, even an incident or

behavior by the defendant during trial could warrant a second examination. The record on appeal does not indicate any incident or abnormal behavior during the first trial that would warrant another examination to determine appellant's competency to stand trial. To the contrary, counsel for the State in argument before this court, after repeated inquiry, conceded that had it not been for the theory of defense propounded by counsel, in his opening statement, the court would not have been justified in declaring the mistrial.

Appellee argues that defense counsel's opening statement could have influenced the court to order another examination. In that statement reference is made to appellant's "dazed" character, "loss of memory" and "beatings by the deceased." However, these same references were made to the same court in an earlier hearing to determine defendant's competency to stand trial. Opening statements are not evidence and absent misconduct of counsel in making such statements would not constitute grounds for a mistrial. Appellee's argument on this point is not persuasive.

Assuming the court ordered the examination for purposes of the insanity plea the issue becomes one of whether the mistrial was properly granted for such purposes when the State had ample notice and opportunity to arrange for such an examination before appellant was placed in jeopardy.

The general rule as to double jeopardy as stated in K.S.A. 1977 Supp. 21-3108 is that once jeopardy has attached, the defendant may not be reprosecuted for the same crime unless the trial was terminated because of some action on the part of the defendant or the conviction was set aside as a result of the defendant's appeal or motion. *Price v. Georgia,* 398 U.S. 323, 26 L.Ed.2d 300, 90 S.Ct. 1757 (1970). Even when a mistrial is declared without the consent of the defendant or upon his motion, a retrial is still constitutionally permissible *if* the judge exercised sound discretion in determining justice required a mistrial. *United States v. Jorn,* 400 U.S. 470, 27 L.Ed.2d 543, 91 S.Ct. 547 (1971). The test to be applied in assessing the judge's discretion in declaring a mistrial and discharging the jury from giving a verdict is whether there is a *manifest necessity* for the act, or the *ends of public justice would otherwise be defeated. United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

The federal standards derived from the Fifth Amendment

double jeopardy clause are now applicable to the states via the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 23 L.Ed.2d 707, 89 S.Ct. 2056 (1969). This court recognized the "manifest necessity" doctrine in *State v. Finley,* 208 Kan. 49, 490 P.2d 630 (1971). There the "manifest necessity" for declaring a mistrial was juror misconduct. Neither party was responsible for the incident. The court stressed the unforeseeable nature of such a contingency in holding that the mistrial was warranted and the reprosecution was not barred by reason of double jeopardy.

The United States Supreme Court in *Illinois v. Sommerville,* 410 U.S. 458, 35 L.Ed.2d 425, 93 S.Ct. 1066 (1973), considered the "manifest necessity" test. There defendant was indicted for theft but the indictment was incurably defective under Illinois law because the State did not allege that the defendant intended to permanently deprive the owner of his property. This discovery was made after the jury was impaneled and sworn but before any evidence was submitted. The State moved for a mistrial, realizing there was reversible error. The defendant objected but the motion was granted. The defendant alleged double jeopardy in the second trial.

The court held there was no double jeopardy, stating: "[W]here the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice." 410 U.S. at 471.

This issue has evolved into a *balancing of interests* analysis; the appellant's right not to be placed in double jeopardy versus the public interest in seeking a final determination through a second trial.

Appellant asserts she had the right to have her trial completed by the first jury in the first trial. This is a valued right recognized by the United States Supreme Court in *United States v. Jorn,* 400 U.S. 470, 27 L.Ed.2d 543, 91 S.Ct. 547 (1971):

"Certainly it is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the Government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense. Thus, for example, reprosecution for the same offense is permitted where the defendant wins a reversal on appeal of a conviction. *United States v. Ball,* 163 U.S. 662 (1896); see *Green v. United States,* 355

U.S. 184, 189 (1957). The determination to allow reprosecution in these circumstances reflects the judgment that the defendant's double jeopardy interests, however defined, do not go so far as to compel society to so mobilize its decisionmaking resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error. But it is also clear that recognition that the defendant can be reprosecuted for the same offense after successful appeal does not compel the conclusion that double jeopardy policies are confined to prevention of prosecutorial or judicial overreaching. For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.' See *Wade v. Hunter,* 336 U.S. at 689.

"If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. See *United States v. Perez,* 9 Wheat., at 580." 400 U.S. at 483-485.

The valued right to be tried by a particular jury is evident in the case at bar in light of the variation in the two trials of Yolanda Reed's direct examination testimony. The first trial testimony referring to appellant's "weird look" is somewhat supportive of appellant's insanity defense. There was no such testimony on direct examination in the second trial although it is true that on cross-examination defense counsel was able, via leading questions, to suggest appellant's lack of awareness regarding her actions.

Although representing a minute portion of the transcript, the importance of this testimony cannot be denied. Here we have a murder case in which defendant is relying upon an insanity defense. The victim's girlfriend, witness for the State and an assault victim herself, testifies in the first trial on direct examination in a narrative response, that defendant looked and acted strangely. Because of the solicitous nature of leading questions, even if this same testimony was extracted on cross-examination in

the second trial, it would not have the same devastating impact upon the State's case.

In *Carsey v. United States,* 392 F.2d 810 (D.C. Cir. 1967), the court, in discussing the double jeopardy question which arises on the granting of a mistrial, stated:

"In Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), the Supreme Court said: 'At times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest — *when there is an imperious necessity to do so.*' (Emphasis added.) Notwithstanding the constitutional prohibition against double jeopardy, the Supreme Court has found sufficient necessity for a retrial when a jury was unable to agree, or a juror was biased, or war conditions required postponement of a court-martial, or a conviction was reversed either on direct appeal or on collateral attack. But repeated trials subject a defendant to serious hardship. In *Downum* the Supreme Court said, 'We resolve any doubt in favor of the liberty of the citizen.' 372 U.S. at 738, 83 S.Ct. at 1035." pp. 811-812.

The Supreme Court in the recent case of *Arizona v. Washington,* 434 U.S. 497, 54 L.Ed. 2d 717, 98 S.Ct. 824 (1978), stated:

"Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant.

"The words 'manifest necessity' appropriately characterize the magnitude of the prosecutor's burden." p. 505.

In *State v. Finley,* 208 Kan. 49, the court, after being made aware that one of the jurors had been contacted by the defendant's girlfriend, conducted an examination of the juror. The juror acknowledged he had been approached by the girlfriend and indicated that by reason thereof he did not think he could give the defendant a fair chance. The court declared a mistrial without objection by the defendant. At the second trial defendant raised the issue of double jeopardy. This court held:

"When particular circumstances manifest a necessity for so doing, the trial court may, in its sound discretion, declare a mistrial, discharge the jury, and require a defendant to stand trial before another jury when failure so to do will defeat the ends of justice to either or both parties." Syl. ¶ 1.

"Where the trial court determines the declaration of a mistrial to be a manifest

necessity in a criminal prosecution, wherein a third party communicates with a juror who, in a judicial proceeding, confesses that he has become influenced by such communication to the extent that he cannot give a fair trial, a reprosecution is not barred by reason of double jeopardy." Syl. ¶ 2.

In the present case, the need for a psychiatric examination was not an unforeseeable contingency lacking in predictability as was the jury tampering in *Finley*.

A review of the entire record fails to disclose any manifest or imperious necessity in granting the mistrial over defendant's objections. To do so absent such manifest necessity constituted an abuse of discretion by the trial court and defendant's motion for dismissal of all charges should have been granted. Failure to do so constituted a violation of her constitutional rights not to be placed in jeopardy more than once and a violation of the mandates of K.S.A. 1977 Supp. 21-3108.

In view of the foregoing there is no necessity to consider appellant's other points on appeal.

The judgment is reversed and the case remanded with directions to discharge the defendant.