No. 55,983

STATE OF KANSAS, *Appellee,* v. LILA J. BAKER, *Appellant.*

(689 P.2d 803)

Opinion filed October 26, 1984.

*Robert E. Keeshan,* of Hamilton, Peterson, Tipton, Muxlow & Keeshan, of Topeka, argued the cause and was on the brief for the appellant.

*Darrell E. Miller,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Rod Ludwig,* of Miller & Ludwig, of Mankato, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action from a conviction of murder in the first degree (K.S.A. 21-3401). The defendant, Lila J. Baker, was tried and convicted of the murder of her uncle, Milford Fall. The circumstances leading up the homicide were not greatly in dispute. The State's evidence showed that the defendant was at the home of her uncle and aunt, Mr. and Mrs. Milford Fall, on the morning of November 19, 1982. After they had breakfast and participated in Bible study, Milford Fall went to the bathroom to shave, leaving the defendant and Mrs. Fall in the kitchen. According to the State's evidence, the defendant left the kitchen and followed her uncle to the bathroom where she shot him five times. Immediately after the shooting, the defendant told Mrs. Fall that she had observed the victim shooting himself and that she had taken the gun out of his hand and put it in her purse. Milford Fall's body was taken to a funeral home. The sheriff and deputy coroner originally labeled the death to be a suicide. However, in the process of embalming the body, a fifth bullet hole was discovered in the victim's back. An investigation followed, and the defendant was charged with murder in the first degree.

Following the shooting the defendant gave several versions as to what happened. One version was that the defendant was in the

hall when the shooting occurred. Another version was that she was in the bedroom across from the bathroom when she saw Fall shoot himself. On November 22, 1982, three days after the shooting, the defendant gave a written statement to the Jewell County sheriff in which she stated that she had stepped into the living room, heard the shots, and rushed to the bathroom. Fall was still standing but immediately fell down. Under these versions, none of the shots were fired by the defendant. A psychiatrist, called to the stand by the defendant, testified that the defendant had told him that while she was in another room, she heard two shots. She then went to the bathroom where Fall gave the gun to her, and she finished him off with an additional three shots. There was never any real dispute in the case of the fact that the defendant had shot her uncle. The weapon used was the defendant's gun, used by her in target practice at her home. The basic defense in the case was that the defendant was not guilty by reason of insanity. The jury considered all of the evidence in the case, rejected the defense, and returned a verdict of guilty of murder. The defendant appealed.

The first point raised by defendant on the appeal is that the trial court erred in not granting defendant's motions for acquittal at the close of the State's evidence and again at the close of all the evidence presented in the case. The defendant maintains, in substance, that the undisputed evidence established that the defendant was legally insane at the time of the killing as a matter of law and, therefore, the trial court should have taken the case from the jury. The State took the position that the issue of defendant's sanity was a jury question. We hold that the trial court properly submitted the issue of defendant's sanity to the jury.

This issue is covered by our holdings in *State v. Nemechek*, 223 Kan. 766, 576 P.2d 682 (1978), and *State v. Boan*, 235 Kan. 800, 686 P.2d 160 (1984). In *Nemechek*, this court stated:

"There is a presumption of sanity in a criminal proceeding that may be relied upon by the prosecution to establish a prima facie case. The presumption is rebutted when evidence is introduced which could raise a reasonable doubt concerning a person's sanity and the question of sanity then becomes a question for the jury, assisted by proper instructions." Syl. ¶ 1.

In *Nemechek*, the court stated that it is a rare occasion when an insanity question should be taken from a jury by a motion for

acquittal. *Nemechek* was followed by *State v. Boan* which held that, unless evidence of insanity is so great that the trial judge could rule that the government could not convince a reasonable man it has sustained its burden of proof, the issue should go to the jury.

There was evidence presented in this case that, following the shooting, defendant called a friend and requested that she send some men down to the Fall residence. The two men testified that they went there and defendant asked them to go back to her house and get rid of a box and shells she had there which matched the gun used in the shooting. The two psychiatrists who testified at the trial on behalf of the defense concluded, in substance, that although the defendant was operating with delusional thinking, she knew that her uncle was going to die when she pulled the trigger. Although each of the medical experts was of the opinion that the defendant had a severe mental illness, suffered from delusions, was in a psychotic state, and believed that she was right in shooting her uncle, neither of the doctors testified that she lacked the capacity to know that what she was going was contrary to law. In other words, both psychiatric experts testified that, at the time of the shooting, the defendant understood the nature and quality of her act—she knew that she was shooting her uncle with a gun and that he was likely to die therefrom. Although the defendant believed that she was morally right in killing her uncle because she felt anger and hostility toward her uncle because of her delusional thinking, neither of the medical experts testified that she did not know that what she was doing was legally wrong. Thus the test for legal insanity under the *M'Naghten* rule as clarified in *State v. Boan* was not satisfied. Furthermore, there was testimony from defendant's husband that he never thought the defendant did not know right from wrong and always thought she knew who she was and what she was doing. This evidence, coupled with defendant's attempts to conceal her responsibility for the crime, raised an issue of fact which the trial court properly submitted to the jury. We hold that the trial court did not err in denying defendant's motions for acquittal.

Defendant's next point is that the trial court erred in refusing to permit an expert in psychiatry, Dr. Walter Menninger, to testify whether he had an opinion as to defendant's insanity

under the *M'Naghten* rule. We have examined the record in this case and concluded that the trial court did not prevent defense counsel from asking Dr. Menninger's opinion in regard to defendant's sanity. At one point in the trial, the court sustained an objection to a question, stating that the form of the question was improper because it was multi-faceted. It is clear to us that the question asked was somewhat leading. Later, counsel specifically asked Dr. Menninger for his opinion as to defendant's mental ability to distinguish between right and wrong on the date of the shooting. Dr. Menninger was permitted to answer the question. We find that the trial court did not refuse to permit Dr. Menninger to state his opinion as to defendant's sanity.

The third issue is whether the trial court erred in failing to sustain defense counsel's objection to lay testimony regarding defendant's knowledge of right and wrong. Specifically, the defendant's husband was permitted to testify on cross-examination that the defendant always appeared to know who she was, where she was, and what she was doing, and that he never suspected that she did not know right from wrong. The Kansas decisions have consistently permitted lay testimony as to a defendant's sanity to be considered by the jury. *State v. Bates,* 226 Kan. 277, 280, 597 P.2d 646 (1979); *State v. Rumble,* 81 Kan. 16, 105 Pac. 1 (1909). We find no abuse of discretion by the trial court in permitting the husband to testify as to his observations of the defendant's actions and demeanor during the time period when the shooting occurred and to state his opinion as to her capacity to distinguish between right and wrong.

The defendant's next point is that the defendant is entitled to a new trial by reason of prosecutorial misconduct. We have considered each of the matters about which defendant complains. We have concluded that there was no prejudicial error justifying a reversal of the case. Although the prosecutor may have been carried away by his enthusiasm for his cause, we cannot say that his conduct was so gross and flagrant as to require a new trial. We also note that, as to all but one of the matters complained of, counsel for defendant did not object to the statements made by the prosecutor in his oral argument.

The defendant's final point on the appeal is that the trial court erred in allowing court proceedings outside the presence of the defendant. There were four specific incidents during the trial

when court and counsel took up matters at a time the defendant was not present. A defendant's right to be present at his criminal trial is protected under the Sixth Amendment to the United States Constitution and K.S.A. 22-3405. This court has interpreted those provisions, stating:

"We recognized the general rule that the defendant's statutory and constitutional rights are violated only if the defendant is absent when the jury is hearing the case or when he is prevented from attending such other proceedings where his presence is essential to a fair and just determination of a substantial issue. The defendant's rights to be present, however, do not encompass proceedings before the court involving matters of law." *State v. Garcia,* 233 Kan. 589, 594-95, 664 P.2d 1343 (1983). See also *State v. Sanders,* 227 Kan. 892, 893-94, 610 P.2d 633 (1980); *State v. Nelson,* 223 Kan. 251, 253, 573 P.2d 602 (1977); *State v. Mantz,* 222 Kan. 453, 463, 565 P.2d 612 (1977).

In *Sanders,* the court heard a motion in limine at an in-chambers conference when the defendant was not present. The court held that the motion was not crucial since only matters of law were being considered and the defendant was not prejudiced because of his absence. In *Mantz,* an in-chambers conference was held between counsel and court involving instructions. No instructions were presented to the jury at that time. The court held that only matters of law were considered and that defendant's presence was not essential to a just determination of a substantial issue. In the case now before us the same type of situation existed in two of the incidents about which defendant complains. The court heard a motion for acquittal and at another time heard arguments about the admissibility of certain testimony in the absence of the defendant. The issue on the motion for acquittal and the determination of the sufficiency of the foundation for the admission of testimony were both matters of law. The jury at no time was aware of these rulings. We find no prejudice in the fact that the defendant was not present at those conferences.

The defendant also complains about the court's discussion with the jury while she was absent. Simply stated, after the jury had retired to the jury room to deliberate and as evening approached, the judge asked the jury whether it wanted to recess its deliberations until the next morning or continue to deliberate. The jury opted to continue deliberations and did so. In due course, the jury came in with a verdict of guilty which was delivered to the court at a time defendant was present. Although

a defendant has the right and should be present when a court communicates with a jury, the absence of the defendant may be harmless error where there is no reasonable possibility of prejudice from the error. That rule is recognized in *State v. Garcia,* 233 Kan. at 596. Under the circumstances shown in the record, we hold that the defendant's absence at the time the judge discussed with the jury whether or not it desired to continue its deliberations was harmless error beyond a reasonable doubt and that a new trial should not be granted for that reason.

The other incident from which defendant was absent was an in-chambers conference where defense counsel indicated defendant was having trouble understanding the proceedings. Counsel simply asked for the court's patience while he was talking with his client. It appears that counsel desired more time to better explain things to defendant. Defense counsel did not suggest that there should be a new competency hearing. This in-chambers conference should not be considered a competency proceeding. Where there is a competency proceeding, K.S.A. 22-3302(8) requires that the defendant be personally present at all proceedings under that section. Here the in-chambers conference was not a competency proceeding, and we find this claim of error to be without merit.

We have considered all of the points of claimed error raised by the defendant on the appeal. The case was a difficult one because the evidence was undisputed that the defendant was suffering from schizophrenic paranoia, a severe mental illness. The case was prosecuted and defended by two able trial lawyers who represented each side in a highly professional manner. None of the issues raised on the appeal justify a reversal of the case.

The judgment of the district court is affirmed.