IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 113,275
113,276
113,277
113,278

STATE OF KANSAS,
*Appellee,*

v.

GLENN D. GROSS,
*Appellant.*

SYLLABUS BY THE COURT

1.

Generally, appellate courts require a party to submit an issue to the trial court—that is, to preserve an issue—before the issue can be raised on appeal. Nevertheless, because that general practice is prudential, rather than jurisdictional, courts do not draw a bright line. Three recognized exceptions allow an appellate court to consider an issue raised for the first time on appeal if: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason.

2.

A defendant who asserts a violation of K.S.A. 2017 Supp. 22-3302(7), which addresses a criminal defendant's right to be present during competency proceedings, may raise the issue on appeal for the first time because the allegation involves a potential deprivation of the due process guaranteed by law, and the right to due process is a fundamental right.

1

3.

K.S.A. 2017 Supp. 22-3302 does not mandate that the defendant be present when the discussion concerns whether to hold a competency hearing.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 27, 2016. Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed May 25, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Anna M. Jumpponen*, assistant county attorney, argued the cause, and *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Glenn D. Gross asks us to determine whether K.S.A. 2017 Supp. 22-3302(7) granted him a right to be present when, during the first day of his trial, his attorney spoke with the trial judge and the prosecutor about the attorney's concerns regarding Gross' mental state. Gross' attorney did not ask explicitly for a competency examination or a competency hearing, and this court has previously held "K.S.A. 22-3302 does not mandate that the defendant be present when the discussion concerns *whether* to hold a competency hearing." *State v. Perkins*, 248 Kan. 760, 770, 811 P.2d 1142 (1991).

Nevertheless, Gross argues *Perkins'* analysis is inconsistent with the plain language of 22-3302(7) and thus with the rubric this court currently employs when

2

interpreting statutes. He asks us to overrule that holding or to at least determine it does not apply to the facts of this case. We reject both arguments.

We conclude this court's holding in *Perkins* applies in this case, K.S.A. 2017 Supp. 22-3302 is ambiguous, and the statute's language does not clearly support Gross' reading of its meaning. In light of those conclusions, the doctrine of stare decisis and 27 years of legislative acquiescence to this court's interpretation persuade us to reaffirm and apply the *Perkins* holding.

FACTS AND PROCEDURAL HISTORY

The State filed four criminal cases against Gross for crimes he allegedly committed while in the Saline County Jail. The trial judge consolidated the cases for trial.

Before trial, the judge ordered a competency evaluation based on his "own knowledge and observation of Defendant in this matter." Central Kansas Mental Health Center (CKMHC) performed the evaluation. The evaluator concluded Gross was competent to stand trial, observing Gross "had no difficulty expressing himself verbally," understood the nature of the charges against him, understood court-related terms, and would be able to assist his attorney. The evaluator also noted that Gross "expressed a verbal understanding of appropriate behavior but verbalized that he chooses to behave in a threatening and destructive manner despite any potential consequences."

After this evaluation had been performed, Gross gave notice of his intent to assert a defense based on mental disease or defect. The State responded with its own motion for a mental health evaluation, which the trial judge granted. Larned State Hospital conducted an evaluation and submitted a report.

3

Gross also filed a notice of waiver of his right to a jury trial in all four cases. Prior to the start of the trial, the judge engaged in a colloquy to assure Gross had received the advice of his attorney and was freely and voluntarily waiving his right to a jury trial. During that colloquy, the judge asked Gross whether he was mentally ill or incompetent. Gross replied, "Well, no I'm mentally ill[.] I have a lot of mental illnesses but you know." The judge followed up and ultimately asked Gross:  "[I]n other words, you are competent and you may have an illness but you are competent[,] is that your understanding?" Gross replied, "Yes." The judge accepted Gross' jury trial waiver and began to hear evidence.

Later in the day, Gross' attorney requested the conference that gives rise to the issue on appeal. In chambers, Gross' attorney spoke to the trial judge and prosecutor outside Gross' presence. Gross' attorney stated he wanted to make a record of his "concerns regarding Mr. Gross' mental state currently. Obviously the Court [is] aware of his outbursts that he has been making during the course of the trial so far." The attorney then detailed other off-topic comments Gross made during the proceeding. For example, Gross noticed his counsel used a Staples brand legal pad, which led to "discourse about whether the owner of that company had not run for president at some time." At another point, Gross noticed his counsel's watch and asked how old it was. Counsel indicated these off-topic comments, the outbursts, and Gross' general conduct caused him to question Gross' ability to assist in his own defense. The State asserted that the outbursts were consistent with those made in the past, both prior to and since the mental health evaluation that determined Gross was competent.

The trial judge responded by first noting he had observed Gross' demeanor throughout the day. He then noted:

> "Mr. Gross has been very actively participating in the assistance of counsel by writing extensive notes, following the testimony of the witnesses and [as] the record

4

indicates made certain verbal outbursts during the course of the testimony which reflects his understanding of the testimony of the witness and his disagreement with the witnesses['] testimony and bringing that to the attention of counsel.

"While [defense counsel's] points are of concern as his relationship with his client would clearly be such that he would be more aware of the individual nuances of Mr. Gross than the Court[, t]hat does not in the Court's mind rise itself to the level of any concern for his competency[.] [A]nd we have had multiple opportunities for evaluations of the competency of Mr. Gross[,] and while he may suffer from certain mental illness they are not sufficient defects which would prevent him from participating in the process of assisting counsel[.] [A]nd the record is clear that he is very actively assisting counsel and responding actively and appropriately to his perception of the evidence being presented by the witnesses called thus far.

"So the concern is noted on the record but the Court feels that Mr. Gross remains in a capacity to proceed and participate and understand the proceedings that are before the Court today."

On the second day of trial, which Gross attended, the State offered the CKMHC evaluation and the Larned State Hospital report. Gross did not object, and the judge admitted both reports. The judge then made "a formal finding . . . of competency on the part of Mr. Gross since we have that determination by the appropriate mental Health Agency."

The judge again addressed Gross' competency during the third day of trial. On that day, Gross took the stand in his own defense. Gross' attorney questioned Gross about his mental health history. The State raised objections, which the judge ruled on by stating:

"At this point in time the Court has found Mr. Gross to be competent to stand trial and to assist counsel, we have that report from the Larned State Hospital confirming the same, he has been able to be present and participate in all of the prior proceedings and he has

5

done so appropriately assisting counsel in this regard[.] [S]o the Court has no concerns about his competency or his ability to assist counsel in this matter or to recall his own medical history and to testify about his medical history[.] [T]he Court certainly will allow him to testify about his medical history and the information he has relative to the same."

Gross' competency did not come up again during the trial. After hearing all the evidence, the judge convicted Gross of nine counts of criminal threat, two counts of criminal damage to property, and three counts of battery against a county corrections officer.

At sentencing, the judge again commented on Gross' competency:

"It has been abundantly established that Mr. Gross has from a very early age on been diagnosed with and continues to suffer from severe mental illness[.] [I]t is also abundantly established that this severe mental illness does not render him incompetent, does not render him in a position where he cannot assist counsel, he has been found to be competent to stand trial, he clearly understands right from wrong [as] he articulates to the Court today."

Gross appealed to the Court of Appeals, raising two arguments: (1) The trial judge violated K.S.A. 2017 Supp. 22-3302 by holding a chambers conference to discuss concerns about his mental state and (2) the trial judge failed to properly ensure he understood his right to a jury trial. The Court of Appeals rejected both arguments. *Gross*, 2016 WL 3031229, at *1-3.

Gross petitioned this court seeking review of both issues. We granted review of Gross' claim that he should have been present during the in-chambers discussion of his mental state, but we denied review of his claim regarding his waiver of his right to a jury trial.

6

Gross now asks us to reverse the Court of Appeals and the trial judge and to order a retrospective competency hearing. He recognizes the Court of Appeals relied on precedent of this court in ruling against him.

Indeed, the Court of Appeals noted it was bound by *Perkins*, 248 Kan. at 770, and its holding that "K.S.A. 22-3302 does not mandate that the defendant be present when the discussion concerns *whether* to hold a competency hearing." The Court of Appeals also discussed a previous Court of Appeals decision, *State v. Brockenshire*, 26 Kan. App. 2d 902, 910, 995 P.2d 905, *rev. denied* 269 Kan. 935 (2000), in which the Court of Appeals stated:

> "The proceeding to determine whether to order a competency evaluation pursuant to K.S.A. 22-3302(1) is not a critical stage of the prosecution that requires the defendant's presence under the Sixth Amendment. Neither the Constitution nor the statute requires that the defendant have counsel to represent him or her at the proceeding. Therefore, [a defendant's] Sixth Amendment right was not violated by the fact he was not present at the proceeding to determine if a competency evaluation was required."

Gross does not discuss *Brockenshire* in his petition for review or other briefs. In fact, he did not ask us to consider what impact, if any, the Sixth Amendment to the United States Constitution may have on the analysis. Gross' counsel reaffirmed at oral argument that he was not asserting a constitutional violation. Therefore, we limit our analysis to the statutory requirements of Kansas law.

In that regard, Gross asks us to reconsider *Perkins*. Alternatively, he asks us to conclude *Perkins* does not apply to his case. Before we address *Perkins*, however, we must determine whether Gross preserved this issue for appellate review.

1.  *Is this Issue Preserved?*

As Gross concedes, during the in-chambers hearing on the first day of trial, no one questioned whether Gross should be present. Thus, the issue now before us was not presented to the trial judge or ruled upon.

Generally, we require a party to submit an issue to the trial court—that is, to preserve an issue—before it can be raised on appeal. Because this general practice is prudential, rather than jurisdictional, appellate courts do not draw a bright line. *State v. Rizo*, 304 Kan. 974, 978-79, 377 P.3d 419 (2016). Three recognized exceptions allow an appellate court to consider a claim for the first time on appeal if:

> "'(1) The newly asserted claim involves only a question of law arising on
> proved or admitted facts and is determinative of the case;
> (2) consideration of the claim is necessary to serve the ends of justice or
> to prevent the denial of fundamental rights; or (3) the district court is
> right for the wrong reason.' [Citations omitted.]" *State v. Godfrey*, 301
> Kan. 1041, 1043, 350 P.3d 1068 (2015).

Gross asks us to recognize a new exception that would allow an issue to be raised for the first time on appeal. Under this proposed exception, a defendant could raise the issue if he or she had not been present when an alleged error occurred and did not have an opportunity to personally assert a right to be or to have been present. We do not find it necessary to create a new exception for this circumstance, however, because at least one

of the recognized exceptions—specifically, the second exception listed above—applies under the facts of this case.

Gross' challenge, if successful, would mean he had been denied a right granted by statute and, thus, had been deprived of the due process guaranteed by law. Because of the potential due process violation, we can conclude consideration of the claim is necessary in order to prevent the denial of a fundamental right. See *State v. Puckett*, 230 Kan. 596, 600, 640 P.2d 1198 (1982). Additionally, we are not hindered by the lack of a trial court ruling. When we interpret statutes, we do not give deference to trial court rulings because we are considering a question of law that this court decides de novo. See *Landrum v. Goering*, 306 Kan. 867, 872, 397 P.3d 1181 (2017). We, therefore, consider Gross' arguments even though they are raised for the first time on appeal.

We turn next to Gross' arguments about *Perkins*, which he asserts lacks precedential value. Although he primarily argues *Perkins* was wrongly decided, he also argues *Perkins* is distinguishable. We begin with his second point because if Gross is correct we would not need to discuss *Perkins* in more detail.

2. *Does* Perkins *Apply?*

Like Gross, Dennis D. Perkins raised his competency prior to trial. Perkins' trial judge then ordered a competency evaluation. The first evaluation was inconclusive because Perkins refused to cooperate. After a second attempt and a completed evaluation, the trial judge found Perkins competent to stand trial.

Perkins' behavior during trial, like Gross', caused renewed concerns about competency. After Perkins engaged in a lengthy outburst that resulted in a court order to remove him from the courtroom, his attorney immediately moved for a mistrial. The trial

9

judge denied the motion and then took a lunch recess. After lunch, Perkins refused to return to the courtroom and asked to be returned to jail. The trial proceeded without him. The next morning, in Perkins' absence and apparently without a determination of whether Perkins should be present, his attorney renewed the motion for mistrial and requested a third competency evaluation. The trial judge denied both motions.

On appeal, Perkins cited K.S.A. 22-3302 and argued he was denied his right to be present during the in-chambers conference when his counsel asked for another competency evaluation. The *Perkins* court noted: "The defense characterizes these in-chambers discussions as proceedings regarding competency." *Perkins*, 248 Kan. at 769.

These facts make *Perkins* applicable to our current case. Both Perkins and Gross had been subject to prior evaluations that resulted in a finding of competency. When their behavior raised new concerns, defense counsel in both cases raised the topic of competency outside their respective client's presence and without a determination of whether they had waived their presence. In contrast to the facts of our current case, Perkins' counsel more clearly requested a new evaluation. And both trial judges concluded a new evaluation was not warranted. On appeal, both defendants characterized the judge's ruling as a finding of competency. Given these commonalities, we find no basis to meaningfully distinguish the hearing at issue in Perkins from the one at issue in this appeal.

Generally, this conclusion means *Perkins* would control and the trial judge and the Court of Appeals correctly applied it in the current case. Under *Perkins'* holding, "K.S.A. 22-3302 does not mandate that the defendant be present when the discussion concerns *whether* to hold a competency hearing." *Perkins*, 248 Kan. at 770. Thus, under *Perkins*, no statutory violation occurred when Gross was not present during the in-chambers discussion between the judge and counsel on the first day of Gross' trial.

10

Gross alternatively asks us to reconsider *Perkins*. He argues (1) the single case cited by the *Perkins* court does not support *Perkins'* holding and (2) the *Perkins* court ignored or twisted the plain language of 22-3302. We now turn to the first of these questions.

### 3. *Is* Perkins *Supported by the Single Case Cited After Its Relevant Holding?*

The only case the *Perkins* court cited immediately after stating: "K.S.A. 22-3302 does not mandate that the defendant be present when the discussion concerns *whether* to hold a competency hearing," was *State v. Baker*, 236 Kan. 132, 689 P.2d 803 (1984). See *Perkins*, 248 Kan. at 770. Gross argues *Baker* is "inapposite to that key holding."

We first note the *Baker* court generally discussed when a criminal defendant's constitutional right to be present applied. The court noted the right did not apply to all aspects of a criminal proceeding. 236 Kan. at 136. After discussing several other alleged violations of the right, the court turned to an instance similar to the one in this case.

In *Baker*, the defense raised an insanity defense and presented expert testimony about the defendant's mental state. The "evidence was undisputed that the defendant was suffering from . . . a severe mental illness." In an in-chambers conference outside Lila Baker's presence, her attorney indicated Baker "was having trouble understanding the proceedings. Counsel simply asked for the court's patience while he was talking to his client." The *Baker* court noted: "It appears that counsel desired more time to better explain things to defendant. Defense counsel did not suggest that there should be a new competency hearing. This in-chambers conference should not be considered a competency proceeding." 236 Kan. at 137. Given that conclusion, the *Baker* court found

11

no merit in the assertion that K.S.A. 22-3302 guarantees a defendant's right to be present during an in-chambers conference.

*Baker* does contrast with *Perkins* in that Baker's attorney did not ask for a competency hearing, but Perkins' attorney did. Nevertheless, Baker's attorney raised the issue of competence when he indicated his client was having trouble understanding the proceedings. See K.S.A. 22-3301 ("[A] person is 'incompetent to stand trial' when he is charged with a crime and, because of mental illness or defect is unable: (a) To understand the nature and purpose of the proceedings against him; or (b) to make or assist in making his defense."). Hence, we do not view *Baker* as being inapposite to *Perkins*.

We also note the similarity between *Baker* and the circumstances of this case. While Baker's attorney raised concerns about the first grounds for finding a defendant incompetent to stand trial—a failure to understand the proceedings—Gross' attorney relied on the second grounds—an inability to assist in making the defense. See K.S.A. 22-3301. Thus, both expressed concerns about the defendant's competency, and neither requested a competency evaluation.

Gross argues that, in contrast to *Baker*, when his counsel raised concerns about Gross' competency everyone apparently understood that his counsel was requesting a hearing. We are not convinced this conclusion is necessarily borne out by the record. Certainly, both the prosecutor and the judge addressed their views on Gross' behavior and demeanor. But, under K.S.A. 2017 Supp. 22-3302, both of them could have requested an evaluation even when Gross' counsel did not. In fact, earlier in the proceedings, the judge had sua sponte ordered an evaluation.

Thus, *Baker*, *Perkins*, and this case share a common characteristic of a hearing related to whether to initiate a competency proceeding. Because the holdings in *Baker*

12

and *Perkins* relate to that circumstance, they apply in this case. See *Perkins*, 248 Kan. at 769-70; *Baker*, 236 Kan. at 137.

Hence, we conclude that *Baker* supports *Perkins'* holding that not all conferences at which the topic of competence is raised require the defendant's presence. Given that, we turn to the question of whether *Baker* and *Perkins* correctly applied K.S.A. 2017 Supp. 22-3302(7).

4. *Does K.S.A. 2017 Supp. 22-3302(7) Clearly Require Gross' Presence?*

In arguing the *Perkins* court did not correctly apply K.S.A. 2017 Supp. 22-3302(7), Gross argues the holding is contrary to the plain meaning of subsection (7) and, in turn, is contrary to the rubric this court currently uses when facing questions of statutory interpretation. We have explained that rubric by stating:

> "'To divine legislative intent, a court begins by examining and interpreting the language the legislature used. Only if that language is ambiguous does a court rely on any revealing legislative history, background considerations that speak to legislative purpose, or canons of statutory construction. When a statute is plain and unambiguous, a court merely interprets the language as it appears; a court is not free to speculate and cannot read into the statute language not readily found there.' [Citation omitted.]" *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 48, 392 P.3d 68 (2017).

As Gross argues, the *Perkins* court did not parse the words of 22-3302 and consider whether plain meaning could be discerned. Nor did it decide whether the statute contained ambiguities that required resorting to statutory construction. So what does the language of the statute tell us?

13

K.S.A. 2017 Supp. 22-3302(7) states: "The defendant shall be present personally at all proceedings under this section." Here, Gross and the State debate the meaning of the word "proceedings," which is not defined in the statute. In order to discern what the Legislature may have meant, the parties discuss the context of subsection (7) as compared to the use of "proceedings" in other subsections of the statute. They also contrast the use of the word "proceedings" with the use of the word "hearing."

In relevant part, with these words emphasized, the entire statute, at the time of Gross' trial and currently, states:

"(1) At any time after the defendant has been charged with a crime and before pronouncement of sentence, the defendant, the defendant's counsel or the prosecuting attorney may request a determination of the defendant's competency to stand trial. If, upon the request of either party or upon the judge's own knowledge and observation, the judge before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial the *proceedings* shall be suspended and a *hearing* conducted to determine the competency of the defendant.

"(2) If the defendant is charged with a felony, the *hearing* to determine the competency of the defendant shall be conducted by a district judge.

"(3) The court shall determine the issue of competency and may impanel a jury of six persons to assist in making the determination. The court may order a psychiatric or psychological examination of the defendant. . . . No statement made by the defendant in the course of any examination provided for by this section, whether or not the defendant consents to the examination, shall be admitted in evidence against the defendant in any criminal *proceeding*. Upon notification of the court that a defendant committed for psychiatric or psychological examination under this subsection has been found competent to stand trial, the court shall order that the defendant be returned not later than seven days after receipt of the notice for *proceedings* under this section. If the defendant is not

14

returned within that time, the county in which the *proceedings* will be held shall pay the costs of maintaining the defendant at the institution or facility for the period of time the defendant remains at the institution or facility in excess of the seven-day period.

"(4) If the defendant is found to be competent, the *proceedings* which have been suspended shall be resumed. If the *proceedings* were suspended before or during the preliminary examination, the judge who conducted the competency *hearing* may conduct a preliminary examination or, if a district magistrate judge was conducting the *proceedings* prior to the competency hearing, the judge who conducted the competency hearing may order the preliminary examination to be heard by a district magistrate judge.

"(5) If the defendant is found to be incompetent to stand trial, the court shall proceed in accordance with K.S.A. 22-3303, and amendments thereto.

"(6) If *proceedings* are suspended and a *hearing* to determine the defendant's competency is ordered after the defendant is in jeopardy, the court may either order a recess or declare a mistrial.

"(7) The defendant shall be present personally at all *proceedings* under this section." (Emphases added.) K.S.A. 2017 Supp. 22-3302.

In these various sections, the legislature has used the word "proceedings" in different contexts. At several points, the context suggests the term "proceedings" refers to all aspects of a criminal case. See K.S.A. 2017 Supp. 22-3302(1) (requiring the court to suspend the proceedings if the trial court has reason to believe the defendant is not competent to stand trial); K.S.A. 2017 Supp. 22-3302(3) (referring to "any criminal proceeding"); K.S.A. 2017 Supp. 22-3302(4) (requiring proceedings that have been suspended to be resumed if the defendant has been found to be competent); K.S.A. 2017 Supp. 22-3302(6) ("If proceedings are suspended and a hearing to determine the defendant's competency is ordered after the defendant is in jeopardy, the court may either order a recess or declare a mistrial.").

15

At other points, when read in context, the term appears to relate to the hearing conducted after a competency evaluation has occurred. See K.S.A. 2017 Supp. 22-3302(3) ("Upon notification of the court that a defendant committed for psychiatric or psychological examination under this subsection has been found competent to stand trial, the court shall order that the defendant be returned not later than seven days after receipt of the notice for proceedings under this section.").

By the time subsection (7) references proceedings, the statute has described multiple processes (criminal, competency, or both) using the same word. Sometimes the statute specifies which process is intended, other times the process or processes may be inferred. And other times we are left to guess whether the statute references criminal proceedings, the hearing after a competency evaluation has been reported to the court, a court's handling of a broader range of competency-related matters, or all of these circumstances.

To help resolve this ambiguity, Gross focuses on the word "hearing." He then argues the in-chambers conference during his trial was a "competency hearing." But section (1) delineates the initial determination of whether there "is reason to believe that the defendant is incompetent to stand trial," a determination that leads to the suspension of the "proceeding," from the hearing that can lead to the criminal proceeding starting again—i.e., the "hearing conducted to determine the competency of the defendant." And section (2) seems to use "hearing" to refer only to the last step covered by 22-3302—that is, the "hearing to determine the competency of the defendant."

Regarding how the distinction made in sections (1) and (2) apply in this case, here the nature of the arguments and the court's statements related to whether, in the judge's words, "Gross remains in a capacity to proceed." This indicates a discussion of whether

16

another competency evaluation needed to be conducted—that is, a determination of whether there was reason to believe Gross was incompetent—as opposed to a formal determination of competency, which in context of the other sections of 22-3302 would have been a formal proceeding conducted after an evaluation.

Given these multiple uses, we do not hesitate to declare K.S.A. 2017 Supp. 22-3302(7) ambiguous. Further, because of the context in which "proceeding" is used in other portions of the statute, we do not view this ambiguous language as supporting Gross' interpretation that he had a right to be present during the in-chambers discussion about his mental state on the first day of trial. Accordingly, we turn to other principles.

5. *Stare Decisis and Statutory Construction Through Legislative Acquiescence*

The parties do not address statutory construction or offer a view of which rules of construction should be applied. Gross only argues that we need not look beyond the plain language of K.S.A. 2017 Supp. 22-3302. He does not suggest a path of analysis if we conclude, as we have just done, that the statute is ambiguous. Nor does the State directly propose rules of construction that support its position; but it impliedly argues we do not need to consider rules of construction because *Perkins* is sound and has precedential value.

As the State suggests, *Perkins* remains good law in that it has not been overturned or even questioned in subsequent decisions. Under the doctrine of stare decisis, "points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised." *State v. Spencer Gifts*, 304 Kan. 755, 766, 374 P.3d 680 (2016). Adherence to precedent promotes stability in our legal system. Consequently, we apply the doctrine of stare decisis unless we are "'clearly convinced that the rule was originally erroneous or is no longer sound because

17

of changing conditions and that more good than harm will come by departing from precedent.'" 304 Kan. at 766 (quoting *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 [2004]).

Here, as we have discussed, K.S.A. 2017 Supp. 22-3302 is so ambiguous we cannot say from its language that *Perkins* was in error. Further, the parties have not cited and we are not aware of any changing condition that would mean *Perkins* is no longer sound. Finally, we are not convinced that more good than harm will come by departing from precedent in this case. Gross has not suggested the procedure violated his constitutional rights. Additionally, often the mental state of a criminal defendant who suffers from mental illness will be in flux during the stressful period of a trial. The trial judge, the prosecutor, and defense counsel are constantly evaluating whether a competency examination should be ordered. In fact, the record reveals that Gross' competency remained under consideration throughout these proceedings, and the trial judge, after the in-chambers conference, repeatedly raised the issue of competency on the record and in Gross' presence. At any of those times, if the trial judge had concluded there was a reason to believe Gross was incompetent to stand trial, the judge would have been required to suspend the proceedings until he determined Gross was competent to stand trial. K.S.A. 2017 Supp. 22-3302(1). And the judge could have made the determination to suspend the proceedings for a competency determination without conducting a hearing. It follows that the defendant does not have a right to be present when the judge is considering whether to enter such an order.

We also note that *Perkins* was decided in 1991. And since that time, the Legislature has twice amended K.S.A. 22-3302. See L. 2010, ch. 135, § 20; L. 1992, ch. 309, § 1. We have held: "The doctrine of stare decisis is particularly compelling in cases where, as here, the legislature is free to alter a statute in response to court precedent with which it disagrees but declines to do so." *State v. Quested*, 302 Kan. 262, 278, 352 P.3d

553 (2015). And we have recognized this principle as a canon of statutory construction referred to as legislative acquiescence. In *Spencer Gifts,* we noted this canon is trumped by plain language. 304 Kan. at 765-66. Here, however, as we have already concluded, the language of 22-3302 does not compel us to overrule *Perkins*. Therefore, we can conclude the Legislature has acquiesced in *Perkins*' reading of the statute when it amended other sections of 22-3302 but did not legislatively overrule *Perkins*' holding reached 27 years ago.

Consequently, we reaffirm the holding in *Perkins*, 248 Kan. at 770: "K.S.A. 22-3302 does not mandate that the defendant be present when the discussion concerns *whether* to hold a competency hearing." Gross' statutory right was not violated in this case.

The judgment of the district court is affirmed. The decision of the Court of Appeals is affirmed.